**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL HART ) | |
| ) | 3:05-cv-0139-LRH (VPC) |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| CRAIG FARWELL, *et al*. ) | |
| ) | |
| Defendants. ) | June 18, 2007 |
| ) | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment, or in the alternative, motion to dismiss for failure to exhaust administrative remedies (#40). Plaintiff opposed (#45), and defendants replied (#47/48). The court has thoroughly reviewed the record and the motions and recommends that defendants' motion for summary judgment (#40) be granted.

**I. HISTORY & PROCEDURAL BACKGROUND**

Plaintiff Michael Hart ("plaintiff"), a *pro se* prisoner, is incarcerated at Lovelock Correctional Center ("LCC") in the custody of the Nevada Department of Corrections ("NDOC") (#24). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging violations of his First Amendment right to free exercise of religion, his Eighth Amendment right against cruel and unusual punishment, his Fourteenth Amendment rights to equal protection and access to the courts,[1] and his Fifth and Fourteenth Amendment rights to due process (#4). Plaintiff names as

---

[1] The court notes that inmates' access to the courts is protected under the First Amendment.

defendants Craig Farwell, former LCC warden; Lenard Vare, former LCC warden; Rosemary Seals, former LCC associate warden of programs; Glen Whorton, former NDOC associate director of operations; and Rogelio A. Herrera, former LCC caseworker. *Id*.

Plaintiff's complaint arises from a series of lockdowns at LCC due to short staffing. *Id*. Plaintiff, who is incarcerated in protective segregation ("PS"), contends that the prison unfairly instituted lockdowns more frequently in the PS unit than in general population ("GP"). After dismissals,[2] plaintiff's claims are as follows:

- Count 1 – plaintiff alleges that defendants violated his Fourteenth Amendment right to equal protection because, although GP and PS inmates are similarly situated, defendants deliberately target PS inmates for more frequent lockdowns, without a legitimate penological objective, to discourage inmates from seeking PS or to pressure PS inmates to return to GP;

- Count II – plaintiff alleges that defendants violated his First Amendment right to the free exercise of religion by instituting lockdowns which prevented his access to the activity room, thereby denying him the opportunity to worship;

- Count IV – plaintiff alleges that defendants violated his Fourteenth Amendment right to due process by instituting unequal lockdowns, which prevented him from worshiping or participating in programs;

- Count V – plaintiff alleges that defendants violated his Fifth Amendment right to due process in the same manner as count IV.

*Id*.

The Court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

///

---

[2] Plaintiff voluntarily dismissed counts III and VI (#25 and #21). In its June 9, 2006 report and recommendation (#25), this court denied defendants' motion to dismiss count I, which the district court approved and adopted on January 23, 2007 (#46).

2

## II.  DISCUSSION & ANALYSIS

**A. Discussion**

**1. Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  In inmate cases, the courts must

> [d]istinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, __ U.S. __, 126 S.Ct. 2572, 2576 (2006).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial.  *Anderson*, 477 U.S. at 248.  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an

3

element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

**B. Analysis**

**1. Count I**

Defendants argue that PS inmates are not similarly situated to GP inmates, and that plaintiff cannot prove that the lockdowns were not for a legitimate penological interest or that defendants acted with discriminatory intent (#40, pp. 19-20). Plaintiff responds that prison regulations state that PS and GP inmates are to be treated equally and that defendants have not offered any justifiable reason to show the necessity of treating the two units differently (#45, pp. 6-7).

The equal protection clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). "In the prison context, however, even fundamental rights such as the right to equal protection are judged by a standard of reasonableness – specifically, whether the actions of prison officials are '"reasonably related to legitimate penological interests."' *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

First, the court notes the important fact that, aside from plaintiff's allegations, there is no evidence that PS was locked down more than other units. Plaintiff submits only eleven days worth of PS unit logs purporting to prove that he was denied access to the activity room on Sunday nights during the time scheduled for earth-based religious worship (#45, Exhibit 2). While the logs do reveal that PS was locked down at certain times, they do not demonstrate that the PS inmates were treated differently than other inmates.

Plaintiff also submits AR 509 to prove that PS inmates must be treated the same as GP inmates. AR 509 states, "Inmates in PS should be afforded the same general living conditions and privileges as inmates in the GP consistent with resources and the security requirements of the unit" (#45, Exhibit 5). However, this only supports defendants' contention that they have discretion to place resources where they are most needed for security purposes.

The evidence reveals that GP inmates can be classified as minimum, medium, or close custody, but that PS inmates are classified *only* as close custody. *Id*.; *see also* #40, Exhibit B, AR 521, pp. 2-5; *see also* #40, Farwell Declaration, ¶¶ 25-26. Close custody has more restrictions than medium or minimum security classifications. *Id*. PS inmates require special protection from other inmates, which is why PS inmates are segregated in the first place. *Id*., Farwell Declaration, ¶¶ 6, 28. Thus, the very nature of PS is that inmates' movements are restricted for security reasons more so than GP inmates. *Id*., Farwell Declaration, ¶¶ 28.

The undisputed evidence demonstrates that during the time period in question, there were staffing issues at LCC because of its isolated geographic location. *Id*., Farwell Declaration, ¶ 11. Staff was in such short supply at that time that defendants had to move correctional officers from their usual positions to positions where they were needed, leaving certain areas of the prison on lockdown because of lack of officer presence. *Id*., Farwell Declaration, ¶¶ 12-13. A certain number of officers are required to directly supervise PS inmates to fulfill their special protection requirements. *Id*., Farwell Declaration, ¶¶ 12-19. Clearly, decisions to place correctional officers in certain areas of the prison based on short staffing and prison security needs is reasonably related to legitimate penological interests.

Plaintiff also has failed to produce any evidence of discriminatory intent. Defendants produced undisputed evidence that at the time in question, there were more beds in PS than GP,

5

1  which implies that defendants would not want PS inmates moving to the more crowded GP units.
2  *Id.*, Farwell Declaration, ¶27. Defendants also maintain that they made every attempt to schedule
3  lockdowns so that they were distributed evenly throughout the prison, in accordance with the
4  prison's needs. *Id.*, Farwell Declaration, ¶¶ 14, 22, 26, 29. The evidence demonstrates that only
5  the activity room and "tier" time, in the area just outside the PS cells, were affected by the
6  lockdowns – PS inmates were still allowed access to the library, gym, yard and dining hall
7  through "door call." *Id.*, Farwell Declaration, ¶¶ 14. The evidence additionally indicates that the
8  number of GP inmates was much higher than the number of PS inmates, which would also dictate
9  where the prison placed its resources. *Id.*, Farwell Declaration, ¶ 24. Plaintiff fails to refute this
10 evidence.

The court concludes that plaintiff has submitted no evidence that defendants acted without legitimate purpose or with discriminatory intent. The court grants summary judgment on count I.

**2. Counts II and IV**

**a. Exhaustion**

Defendants contend that plaintiff failed to exhaust his administrative remedies as to counts II and IV[3] concerning his complaint that the lockdowns denied him access to the activity room, which in turn prevented him from practicing his religion (#40, pp. 12-16). Plaintiff's position is that he did exhaust because he filed grievances with relation to the lockdowns, that the denial of his religious rights are a direct result of such lockdowns, and that his grievances included a

---

[3] Plaintiff alleges a due process violation in count IV and incorporates his factual allegations, which are that the frequent lockdowns in PS have denied plaintiff the opportunity to participate in mandatory rehabilitative programming, employment and educational opportunities, and religious services. Defendants' exhaustion argument for count IV applies only to plaintiff's allegations that his inability to access the activity room denied him his right to religious worship (#40, n.7).

6

1 statement that all of his claims may not be listed (#45, p. 3).[4]

2 The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2002). The exhaustion of administrative remedies is now mandatory and "no unexhausted claim may be considered." *Jones v. Bock*, __ U.S. __, 127 S.Ct. 910, 923-24 (2007). Recently, the Supreme Court held that the PLRA requires "proper exhaustion" of administrative remedies. *Woodford v. Ngo*, __ U.S. __, 126 S.Ct. 2378 (2006). "Proper exhaustion" was defined as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. at 2385 (citations omitted). This court has read *Woodford* as

> [s]etting forth two tests for "proper exhaustion." The "merits test" is satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels. The "compliance test" is satisfied when a plaintiff complies with all "critical procedural rules," including agency deadlines. A finding that a plaintiff has met either test is sufficient for finding "proper exhaustion." Defendants must show that Plaintiff failed to meet both the merits test and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies.

---

[4] Plaintiff also argues that defendants waived the affirmative defense of failure to exhaust administrative remedies in their interrogatory responses (#45, p. 3, *citing* Exhibit 1, p. 24, Response 24). Defendants admit they withdrew their affirmative defense in an interrogatory response, however, argue that the withdrawal was based upon the applicable law at the time (#48, p. 2). Subsequent to defendants' interrogatory response, the Supreme Court held in *Woodford v. Ngo*, 126 S.Ct. 2378 (2006), that the Prison Litigation Reform Act of 1996 ("PLRA") requires "proper" exhaustion. Defendants have since amended their interrogatory response, and have filed a "Notice of Repudiation," in which they repudiate their withdrawal of the affirmative defense of failure to exhaust (#48). Defendants argue that plaintiff will not be prejudiced if the court accepts its repudiation because plaintiff had full and fair notice of defendants' failure to exhaust arguments in its motion for summary judgment, which plaintiff opposed. *Id*. The court agrees. More importantly, defendants never amended their answer to reflect the purported withdrawal of the affirmative defense. Therefore, the affirmative defense remains. Based on this and the intervening change in law, the court concludes that defendants may raise the exhaustion issue.

*Jones v. Stewart*, 457 F. Supp.2d 1131, 1134 (D. Nev. Oct. 4, 2006). The NDOC grievance procedure is governed by Administrative Regulation ("AR") 740 (#40, Exhibit A). Exhaustion is a two-step process that includes one informal level and two formal levels, and contains specific time requirements. *Id*.

The court concludes that plaintiff did not exhaust the freedom of religion allegations contained in counts II and IV. Plaintiff did complete all three grievance levels in a timely manner, and defendants addressed his claims on their merits and in a timely manner (#40, Exhibit C). However, plaintiff never alleges in his grievances that an inability to access the activity room during lockdowns interfered with his religious worship (#40, Exhibit C). In fact, while plaintiff specifically references his Eighth and Fourteenth Amendment rights in each of his grievances, he fails to mention religion or the First Amendment. *Id*. Plaintiff's grievances allege only that defendants' imposition of the lockdowns in an unequal manner prevented his access to the law library and education facilities, and prevented his participation in rehabilitative programming. *Id*.

The fact that plaintiff stated in his grievance, "This claim form may not list the entirety of the complaint," does not persuade the court that plaintiff has exhausted his administrative remedies as to his religious allegations. *Id*. If this were the law, prisoners would be able to by-pass the exhaustion requirements by merely including such a statement. The consequence of plaintiff's failure to bring the freedom of religion issue to defendants' attention in any respect is that defendants were not afforded the opportunity to address and correct any mistakes, which is one of the primary purposes of the exhaustion rules. *Woodford*, 126 S.Ct. at 2385. Therefore, defendants' motion to dismiss for failure to exhaust administrative remedies is granted entirely as to count II and with respect to the freedom of religion allegations in count IV.

**b. Merits**

The court now turns to the remaining allegations in count IV. Plaintiff alleges that the lockdowns prevented his participation in programming, education, and employment opportunities, thereby violating his due process rights (#4). Defendants contend that inmates have no right to procedural due process with regard to lockdowns, nor do they have a constitutional right to "programs" (#40, p. 19).

The procedural guarantees of the Fourteenth Amendment's Due Process clause apply only when a constitutionally-protected liberty interest is at stake. *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1995). The Ninth Circuit has held that prisoners do not have a liberty interest in remaining free from "lockdown." *Hayward v. Procunier*, 629 F.2d 599, 601 (9th Cir. 1980). Nor does an inmate have a constitutional right to a specific educational, employment or rehabilitative program. *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985); *see also Toussaint v. McCarthy*, 801 F.2d 1080, 1094 (9th Cir. 1986).

Since plaintiff has no liberty interest in remaining free from institutional lockdown or in participating in programs, he was not owed due process. Moreover, even if plaintiff did have a liberty interest in educational or rehabilitative programs, he has submitted no evidence that he was denied these rights. The court grants summary judgment on count IV.

**3. Count V**

Defendants argue that the plaintiff's Fifth Amendment due process claim in count V must be dismissed because the Fifth Amendment applies only to the actions of the federal government and there are no federal actors here (#40, p. 22). The due process clause of the Fifth Amendment and its equal protection component apply only to the actions of the federal government. *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th cir. 2001). Since the plaintiff has alleged actions

only by state government employees, the defendants' motion for summary judgment as to count V is granted.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that:

- <u>Count I</u> – there is no evidence that PS inmates were locked down more than other units.  There is also no evidence that PS inmates are similarly situated with GP inmates, or that defendants acted with discriminatory intent in imposing lockdowns.  There is undisputed evidence that defendants acted with reasonable and legitimate penological purpose in imposing lockdowns due to staffing issues.

- <u>Count II</u> – plaintiff failed to exhaust his administrative remedies.

- <u>Count IV</u> –  plaintiff failed to exhaust his administrative remedies as to the denial of his right to freely practice his religion.  Additionally, plaintiff has no liberty interest in remaining free from lockdown, or in education or rehabilitative programs.

- <u>Count V</u> – plaintiff has alleged actions only by state actors.

As such, the court recommends that defendants' motion for summary judgment (#40) be **GRANTED**.  The parties are advised:

1.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.  This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's

judgment.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#40) be **GRANTED**.

**DATED:** June 18, 2007.

_____
**UNITED STATES MAGISTRATE JUDGE**